**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DINA MICHELLE LEBEOUF, | ) Case No.: 1:19-cv-00201-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

**INTRODUCTION**

Plaintiff Dina Michelle Lebeouf ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the briefing and record in this matter, the Court finds the decision of the

---

[1]   Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2]   The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 6, 8, 16.)

1

Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS[3]

Plaintiff protectively filed an application for SSI on March 27, 2015, alleging disability beginning February 20, 2014. AR 182-187.[4] Plaintiff's application was denied initially and on reconsideration and she subsequently requested a hearing before an ALJ. AR 96-111. ALJ Ruxana Meyer held a hearing on October 16, 2017, and issued an order denying benefits on February 7, 2018. AR 13-72. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-11. This appeal followed.

### Relevant Hearing Testimony

The ALJ held a hearing on October 16, 2017, in Fresno, California. Plaintiff appeared in person with her attorney, Lars Christiansen. Impartial Vocational Expert ("VE") Jose Chapara also appeared. AR 39.

In response to questioning by the ALJ, Plaintiff testified that she is thirty-four years old and lives in a three-bedroom house with a friend. Plaintiff has no pets, is divorced, and has a nine-year-old daughter who lives with her. Plaintiff has a driver's license but does not have a car and relies on her mother and a friend to drive her when she needs to transport herself or her daughter. Plaintiff's mother takes Plaintiff's daughter to and from school. Plaintiff did not graduate from high school and does not have her GED. The highest grade she completed was the eleventh grade. AR 43-46.

When asked about her daily activities, Plaintiff testified that she sleeps most of the day. When she is not sleeping she will watch the news or sometimes stare at the wall. Plaintiff usually buys TV dinners, or her mother will bring food over. She puts laundry in the washer and dryer and her daughter helps her fold it. Plaintiff has a cell phone, which she uses to make appointments or call her mother,

---

[3]   Plaintiff solely challenges the ALJ's findings regarding her mental impairments. Accordingly, only the facts and evidence relevant to Plaintiff's mental impairments are discussed herein.

[4]   References to the Administrative Record will be designated as "AR" followed by the appropriate page number.

2

1   and uses applications such as Google maps, email, and Snapchat. Plaintiff has not taken any vacations
2   or left the state since 2014. Plaintiff's mother helps her with her grocery shopping. Plaintiff loads the
3   dishwasher and her daughter does the vacuuming. AR 46-48, 53.

4         Plaintiff testified that she attended an inpatient substance abuse cessation program in 2009.
5   Plaintiff had a one-day relapse in March 2017 but did not use drugs or alcohol between 2014 and
6   March 2017 and had again ceased using drugs and alcohol between March 2017 and the date of the
7   hearing. Plaintiff is currently engaged in a twelve-step program. Plaintiff's father passed away in 2012
8   but she has not attended grief counseling. Plaintiff testified that she is unsure whether she requested
9   grief counseling from her providers but she has not received any. Plaintiff takes medications for her
10  mental health three times a day. She is able to manage her medications, the medications help her, and
11  she does not experience side effects. AR 46-51, 70.

12        When asked about her work history, Plaintiff testified that she performed housecleaning for a
13  hotel in 2006. As part of her work duties, Plaintiff cleaned between nineteen and twenty-two rooms
14  per day. Plaintiff stopped working at the hotel because she lost her housing. Plaintiff did one or two
15  housecleaning jobs with her mother after her employment at the hotel ended. AR 51-53.

16        In response to questioning by her attorney, Plaintiff testified that she was taking her
17  medications and seeing her therapist and other doctors at the time of her substance abuse relapse in
18  March 2017. During this time period, Plaintiff's medications were being changed every two-to-three
19  months because they were not working and she was experiencing side effects. Prior to her relapse in
20  March 2017, Plaintiff was hearing voices, experiencing depression, and had suicidal thoughts. She was
21  also experiencing anxiety and panic attacks. Plaintiff tried to be consistent with her appointments but
22  sometimes had difficulty with transportation or not wanting to get out of bed. AR 53-55.

23        Plaintiff testified that she experiences panic attacks on a weekly basis, typically when she
24  leaves the house. During her panic attacks, she has trouble breathing and starts shaking. To end her
25  panic attacks, Plaintiff sits down, breathes, and takes her medication. Plaintiff's panic attacks last
26  between fifteen and thirty minutes. She experiences difficulty getting out of bed periodically
27  throughout the day because of her depression. During her depressive episodes, Plaintiff prays, takes
28  her medication, cries, and will sometimes call someone on the telephone. Plaintiff experiences

depression three-to-four times per week. Plaintiff further testified that she hears voices as if someone is standing behind her and talking in her ear. The voices typically last for fifteen to thirty minutes but on occasion have lasted for a couple of hours. Her medication is sometimes effective to help with the voices she hears. At the time of the hearing, Plaintiff had heard voices two-to-three times that month. AR 55-58.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE, Jose Chapara. The ALJ noted that Plaintiff did not have any past relevant work and also asked the VE hypothetical questions. The VE was asked to assume an individual with the same age, education, and work experience as Plaintiff for all hypotheticals. AR 63.

For the first hypothetical, the ALJ asked the VE to assume an individual that can understand, remember, and carry out simple instructions, make simple work-related decisions, cope with changes in the routine work setting, and respond appropriately to supervision and coworkers. The VE testified that this individual would be able to perform unskilled work at all exertional levels. AR 63-64.

For the second hypothetical, the ALJ asked the VE to assume the same individual described in the first hypothetical, except this individual could only perform work that is in a non-public setting and does not involve interaction with members of the general public. The VE testified that would erode the base of unskilled work but work as a hospital cleaner, filling and closing machine tender, and house cleaner would be available. AR 64.

For the third hypothetical, the ALJ asked the VE to assume the same individual described in the second hypothetical, except this person could perform frequent handling, fingering, and feeling bilaterally. The VE testified that the same work would be available as in the second hypothetical. AR 64-65.

For the fourth hypothetical, the ALJ asked the VE to assume the same individual described in the third hypothetical, except this person could lift fifty pounds occasionally, lift or carry twenty-five pounds frequently, perform frequent handling, fingering, and feeling with the right dominant hand and occasional handling with the left non-dominant hand. The VE testified there would be jobs available as an advertising material distributor and filling and closing machine tender. AR 65-67.

For the fifth hypothetical, the ALJ asked the VE to assume the same individual described in the

4

fourth hypothetical, except this individual would be absent four days per month. The VE testified that there would be no work available for such an individual. The VE further testified that the Dictionary of Occupational Titles does not address task time or absences and his opinion was based upon his experience, training, and knowledge. AR 67-68.

Finally, Plaintiff's attorney asked the VE hypothetical questions. Plaintiff's attorney asked the VE to assume the individual described in the ALJ's fourth hypothetical, except the individual would not be able to perform jobs where the individual would have to maintain a regular pace and consistently do the same job at the same speed throughout the day. The VE testified that work as an advertising material distributor and filling and closing machine tender would still be available. AR 68-69.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-32. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 27, 2015, the application date. AR 18. Further, the ALJ identified carpal tunnel syndrome of the bilateral hands, major depressive disorder, anxiety disorder, bipolar disorder, personality disorder, panic disorder, and substance addition disorder in reported remission as severe impairments. AR 18. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 18-20. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry twenty-five pounds frequently, lift fifty pounds occasionally, perform work that involves no more than frequent handling, fingering, and feeling with her right dominant hand and no more than occasional handling with her left non-dominant hand, was limited to work that involves understanding, remembering, and carrying out simple instructions and simple work-related decisions, could cope with changes in the routine work setting and respond appropriately to supervision and coworkers, and was

limited to work that takes place in a non-public setting. AR 20-29. The ALJ determined that Plaintiff had no past relevant work, was defined as a younger individual on the date the application was filed, had limited education and was able to communicate in English, and transferability of job skills was not an issue because Plaintiff did not have past relevant work. AR 30. With Plaintiff's RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 30-31, The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, since March 27, 2015, the date the application was filed. AR 32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[5]

Plaintiff's sole issue on appeal is whether the ALJ improperly rejected the medical source statement prepared by Mary Ann Flavan, M.D. and Christopher Millis, LMFT, Plaintiff's treating psychiatrist and therapist. (Doc. No. 12 at 17-24.) According to Plaintiff, the ALJ provided legally insufficient reasons for rejecting this opinion. (*Id.*) The Court disagrees.

In assessing a claimant's RFC, the ALJ may consider any statements provided by acceptable medical sources. *See* 20 C.F.R. § 416.927.[6] Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate

---

[5] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[6] For all claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c applies, not section 416.927. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. The claim here, however, was filed before March 27, 2017. Thus, the Court analyzes Plaintiff's claim pursuant to the treating source rule set forth in section 416.927.

reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

Practitioners such as therapists, in turn, are considered "other sources." 20 C.F.R. § 416.913(d)(1) (2013). "Other sources cannot establish the existence of a medically determinable impairment" but can provide "special knowledge of the individual and . . . insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P (2006). A provider deemed an "other source" is entitled to less deference and "[t]he ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations omitted).

Mr. Millis completed and signed a form mental impairment questionnaire dated October 13, 2017. AR 512-525. Below his signature, Mr. Millis indicated that he consulted with Dr. Flavan in completing the form. AR 515. Mr. Millis stated that Plaintiff had been seen bi-monthly for therapeutic and psychiatric treatment since February 16, 2014, and her diagnoses included major depression (recurrent/severe), PTSD (chronic), and bi-polar (severe) depressed type. AR 512. Mr. Millis reported that Plaintiff had made strides in her recovery and had gained insight and awareness into the function of her intra- and inter-personal relationships with her self and others. *Id.* He described Plaintiff as experiencing poor eye contact with a sad mood, irritable, and appropriate affect. *Id.* Her prognosis was described as "guarded" as she has a "chronic/disabling mental health condition" which requires continual treatment. *Id.* Mr. Millis checked thirty-five of the forty-six available boxes on the form describing Plaintiff's signs and symptoms. AR 513.

In response to form questions, Mr. Millis opined that Plaintiff had moderate limitations in her ability to understand information in a work setting and extreme limitations in her ability to remember information, apply information, interact with others, concentrate, persist, maintain pace, adapt in the workplace, and manage herself in the workplace. AR 514. Mr. Millis checked boxes on the form stating that Plaintiff's chronic mental disorder is "serious and persistent" and Plaintiff relies on ongoing medical treatment, mental health therapy, psychosocial support, or a highly-structured setting to diminish the symptoms and signs of her mental disorder. AR 515. Mr. Millis further indicated that

he anticipated Plaintiff would be absent from work more than four days per month due to her symptoms. *Id*. Additionally, Plaintiff was unable to manage benefits in her own best interest. *Id.* Finally, Mr. Millis stated that Plaintiff's "severe/chronic psychopathologies impair her day-to-day functioning at home" and it is hard for her to leave and function outside. *Id.* According to Mr. Millis, "work would be impossible, as several variables would lead to psychiatric hospitalization." *Id.*

With respect to Mr. Millis's opinion, the ALJ reasoned as follows:

> "Mary Ann Flavan, M.D., and Christopher Millis, L.M.F.T, opined in October 2017 that the claimant had moderate to extreme limitations in understanding, remembering, and applying information. They opined she had extreme limitation in interacting with others, maintaining concentration, persistence, and pace, adapting to changes, and in managing herself. They further opined the claimant met the 'paragraph C' criteria (Exhibit 8F). The undersigned assigns light weight to Dr. Flavan's and Mr. Millis's opinions. Their opinions are inconsistent with their own treatment notes, which include mostly unremarkable objective mental status findings and indicate the claimant's condition improved as she maintained sobriety (*See* Exhibit 9F/1-3, 15-18. 84-87, 88-92). On the other hand, the record evidence instances where the claimant reported more severe symptoms when she was non-compliant with prescribed treatments (*See, e.g.,* Exhibits 7F/18-19, 20-21; 9F/15-18). Additionally, as discussed above, their opinions are inconsistent with the claimant's reported activities of daily living, such as preparing meals, doing household chores, and using smart phone applications (Hearing Testimony; Exhibit 4E). Lastly, a consultative examiner noted the claimant's memory and ability to understand and recall work-related instructions was unimpaired, her thought process was clear and logical, and her judgment, insight, concentration, and attention was "excellent" (Exhibit 5F). Those facts indicate the claimant's work-related mental functions are not as limited as Dr. Flavan and Mr. Millis opined.
>
> The record also does not support Dr. Flavan's and Mr. Millis's opinion that the claimant would be absent from work more than four days per month. Dr. Flavan and Mr. Millis diagnosed the claimant with borderline personality disorder (Exhibits 1F/1-3; 9F/1-3). Although the claimant established a treatment goal of coping with life stressors without using drugs or alcohol in April 2014, she has an irregular mental health treatment record since her alleged onset date, consisting of one visit in 2015, 18 visits in 2016 (five of which were in October 2016), and 14 visits in 2017 (*See* Exhibits 1F; 2F; 9F). In addition, their treatment notes indicate the claimant missed treatment sessions for 'unknown reasons' at various times throughout the period at issue (*See* Exhibits 1F/46; 2F/11; 9F/65-66, 70, 84-85, 101-102). Thus, the record does not support Dr. Flavan's and Mr. Millis's opinions that the claimant's mental impairments will cause her to be absent from work more than four days per month."

AR 27-28.

Mr. Millis's opinion was contradicted by State agency physicians H. Amado, M.D., and A. Garcia, M.D., as well as consultative examiner Mary K. McDonald, Ph.D., all of whom opined that Plaintiff's limitations were less severe than those opined by Mr. Millis. AR 72-81, 83-94, 444-456. As

a result, to the extent Mr. Millis's opinion may be attributed to Dr. Flavan,[7] the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount this opinion.

In this instance, the ALJ assigned little weight to Mr. Millis's opinion because the findings were inconsistent with Mr. Millis's and Dr. Flavan's treatment notes and with the medical record. AR 27-28. An ALJ may discount a treating or examining physician's opinion when it is inconsistent with or unsupported by the medical evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (concluding that a contradiction between treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting treating

---

[7] The Court notes that the opinion at issue appears to have been written and signed by Mr. Millis, a licensed marriage and family therapist, and not by Dr. Flavan. *See* AR 515. The opinion merely states that Mr. Millis "consulted" with Dr. Flavan in completing the questionnaire. *Id.* While the regulations defining therapists as "other sources" have been rescinded and are no longer effective for applications filed on or after March 27, 2017, Plaintiff's application was filed on March 27, 2015. *See* 20 C.F.R. § 416.325. Thus, according to the regulations in place at the time Plaintiff's application was filed, therapists such as Mr. Millis are classified as an "other" source and not an "acceptable medical source." *See* 20 C.F.R. § 416.913 (2013); SSR 06–03p.

As noted above, "[t]he ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (internal citations omitted). In *Gomez v. Chater,* 74 F.3d 967, 971 (9th Cir. 1996), the Ninth Circuit held that "other" sources constitute an acceptable medical source where they work in conjunction with a physician as part of an interdisciplinary team. However, the subsection of the regulation which was the basis for the *Gomez* finding was deleted by amendment in 2000 and an "interdisciplinary team" was removed from the definition of "acceptable medical sources." *Hudson v. Astrue*, 2012 WL 5328786, at *4 (E.D. Wash. Oct. 29, 2012); *Farnacio v. Astrue*, 2012 WL 4045216, at *6 (E.D. Wash. Sept. 12, 2012) (citing 65 Fed.Reg. 34950, 34952 (June 1, 2000)). Thus, even if Mr. Millis worked in conjunction with Dr. Flavan, he is considered an "other" source.

Further, the record does not definitively establish whether Mr. Millis's opinion may properly be attributed to Dr. Flavan. While the medical evidence indicates Dr. Flavan observed, examined, and treated Plaintiff, Mr. Millis's report merely states that it was written in "consultation" with Dr. Flavan. Dr. Flavan does not appear to have signed the questionnaire. AR 515. *See, e.g., Phillips v. Colvin*, 2014 WL 1246342, at *4 fn. 1 (C.D. Cal. Mar. 24, 2014) (finding insufficient evidence to determine whether a therapists' opinion was attributable to a physician who co-signed the opinion); *Ramirez v. Astrue,* 803 F.Supp.2d 1075, 1082 (C.D. Cal.2011) (reasoning that a physician's co-signature on client-plan prepared by a social worker did not indicate that the social worker was under close supervision of the physician in treating or in preparing the reports, thus the social worker's evaluation was not an "acceptable medical source"); *Nichols v. Comm'r of Soc. Sec. Admin.,* 260 F.Supp.2d 1057, 1066–67 (D. Kan. 2003) (concluding that, where physician signed the report of a nurse practitioner but there was no evidence that the nurse practitioner consulted with the physician during the course of treatment, the report was found not to be from an acceptable medical source); *Vasquez v. Astrue,* 2009 WL 939339, at *6 n. 3 (E.D. Wash. Apr. 3, 2009) (holding that a physician assistant's report "signed off" by a superior believed to be a doctor did not constitute "acceptable medical source" opinion). It is not clear how involved Dr. Flavan was in preparing the opinions at issue or whether she reviewed and approved the final form. However, the Court need not resolve whether the opinion is solely attributable to Mr. Millis and the "germane reasons" standard therefore applies because, for the reasons discussed herein, the more stringent "specific and legitimate reasons" standard has been met.

physician's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (reasoning that "incongruity" between a doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"). Accordingly, this was a specific and legitimate reason for discounting Mr. Millis's opinion.

Plaintiff argues that "Dr. Flavan and Mr. Millis were obviously aware of the content of their own treatment notes when they formulated their opinions" and "perfect consistency is not required." (Doc. No. 12 at 21-22.) (Emphasis in original.) In support of this argument, Plaintiff points to her summary of the relevant medical evidence and concludes that Mr. Millis's opinion is consistent with this evidence. (*Id.* at 22.) The Commissioner, in turn, contends that the ALJ's interpretation of the evidence was reasonable and Plaintiff ignores that, despite her depression and anxiety, "she displayed a significant range of both cognitive and social functioning that was consistent with her RFC[.]" (Doc. No. 15 at 8.)

Plaintiff's summary of the evidence is consistent with the evidence that the ALJ considered and cited in her opinion. (*See* Doc. No. 12 at 24.) AR 22-25. The ALJ expressly acknowledged the medical evidence related to Plaintiff's depression, auditory hallucinations, self-harm, and panic attacks, but found that the evidence in the record likewise established that Plaintiff was able to understand, remember, and carry out simple instructions and simple work-related decisions, cope with changes in the routine work setting, interact appropriately with supervisors and co-workers, and perform work in a non-public setting. *See* AR 22-25, 26-27. The ALJ's decision recognizes that Plaintiff has some work limitations, however, she gives little weight to Mr. Millis's severely restricted functional assessments. Further, Plaintiff fails to explain how the evidence she cites supports the degree of limitations opined by Mr. Millis even though the burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require").

A review of the record reveals that there is substantial evidence supporting the ALJ's finding

1    that the relevant medical evidence is inconsistent with the severity of the limitations set forth in Mr.
2    Millis's opinion. While treatment records reflect some limitations, they do not contain any findings
3    substantiating Mr. Millis's opinion that, as of October 2017, Plaintiff had moderate limitations in her
4    ability to understand information in a work setting, extreme limitations in her ability to remember
5    information, apply information, interact with others, concentrate, persist, maintain pace, adapt in the
6    workplace, and manage herself in the workplace, or that she would be absent from work four days per
7    month due to her mental impairments. AR 514. *See also Richardson*, 402 U.S. at 401 (substantial
8    evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a
9    conclusion."). Additionally, there is little indication in the record or in Mr. Millis's report itself as to
10   what the bases for these restrictions might be. Considering the record as a whole and weighing both
11   the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's
12   finding that Mr. Millis's opinion is inconsistent with treatment notes and with the medical record to be
13   supported by substantial evidence.

14        Plaintiff also contends that, in discounting Mr. Millis's opinion that Plaintiff would be absent
15   from work more than four days per month, "the ALJ failed to recognize [that] Plaintiff's mental
16   impairments were exacerbated by her financial and family stress as evidenced frequently in the
17   record" and Plaintiff's "inability to attend treatment sessions only goes to support [Mr. Millis's]
18   opinion that she would be absent from work more than 4 days per month[.]" (Doc. No. 12 at 22-23.)
19   The ALJ acknowledged that "treatment notes indicate that financial and family stressors might have
20   influenced the claimant's presentation during some appointments" and further cited to treatment notes
21   stating that Plaintiff missed treatment for "unknown reasons." AR 28, 328, 538, 540, 542, 544. Based
22   on the record, the ALJ found that Plaintiff's failure to attend treatment sessions was due to factors
23   other than "uncontrolled symptoms associated with her severe mental impairments." AR 28. Thus, the
24   record did not support a finding that Plaintiff would be absent from work more than four days per
25   month due to her mental impairments as opposed to other factors. *See* AR 28.

26        In support of her argument that the ALJ did not properly consider the impact of Plaintiff's
27   financial and family stress on her mental impairments, Plaintiff cites to a single set of treatment notes
28   from July 8, 2015, wherein Plaintiff reported that "she still has rare auditory hallucinations, which

12

occur when she is stressed." AR 380. (*See* Doc. No. 12 at 23.) Specifically, during this session, Plaintiff reported "becoming quite stressed when she cannot locate something and then having a panicky feeling accompanied by the auditory hallucinations." AR 380. This does not establish a "direct correlation" between the severity of her mental impairments and stress from either financial concerns or family issues, nor does it indicate that the ALJ "overlooked/misconstrued" the evidence as Plaintiff contends. *See Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."); *Batson,* 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). Having reviewed the record, the Court finds that the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence.

Plaintiff also asserts that the ALJ improperly substituted her lay opinion for that of a medical provider by finding that Mr. Millis's opinion was inconsistent with his own treatment notes. (Doc. No. 12 at 21.) However, contrary to Plaintiff's contention, it is within the ALJ's province to synthesize the medical evidence. *See Lingenfelter*, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995) (Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]."). Therefore, it was appropriate for the ALJ to weigh the relevant evidence in determining that Mr. Millis's opinion was inconsistent with his and Dr. Flavan's treatment notes and with the medical record.

The ALJ further discounted Mr. Millis's opinions because they were inconsistent with Plaintiff's reported activities of daily living, such as preparing meals, doing household chores, and using smart phone applications. AR 28. The ALJ's decision further cited to Plaintiff's reports that she

prepares simple meals two or three times a week and sometimes prepares three-course meals, cleans the house, does laundry, washes the dishes two-to-three times per week, cleans her bathroom once a week, can go out alone and drive a car, and can use money orders although she has difficulty managing a checking and savings account. AR 26. The ALJ also noted that Plaintiff regularly uses smart phone applications to interact with her daughter, family, and friends. AR 26.

According to Plaintiff, the ALJ's finding was error because the ALJ "grossly overstate[d]" Plaintiff's daily activities do not suggest an ability to perform full time work activities on a regular and continuous basis. (Doc. No. 12 at 23.) (Emphasis omitted.) The Commissioner argues that the ALJ did not overstate Plaintiff's activities of daily living and instead properly "relied on Plaintiff's own express report to the agency that she engaged in activities of daily living that flatly contradicted [Mr. Millis's] assessment of marked limitations, such [sic] interacting appropriately with family and friends as well as the public at large." (Doc. No. 15 at 9.)

An ALJ properly may consider conflicts between a treating physician's opinion and a claimant's testimony. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion); *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that the claimant's daily activities "did not suggest [the claimant] could return to his old job . . . , but . . . did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"). Even if the activities at issue do not constitute substantial gainful activity, they may still contradict allegations of disabling limitations. *Molina*, 674 F.3d at 1112-13 (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]").

Here, the ALJ discounted Mr. Millis's opinions because Plaintiff reported being able to prepare meals, do household chores, and use smart phone applications as part of her daily activities. AR 27-28. One could logically conclude that these activities were at odds with the extreme limitations to which Mr. Millis opined. Where the ALJ makes a reasonable interpretation of the claimant's testimony, it is

not the Court's role to second-guess it. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). Furthermore, contrary to Plaintiff's contention, the ALJ additionally did not "grossly overstate[]" her abilities. (Doc. No. 12 at 23.) (Emphasis omitted.) Plaintiff testified at the hearing that she puts laundry in the washer and dryer, loads the dishwasher, and uses her cell phone to communicate with her mother and daughter. AR 46-48, 53. Plaintiff also completed a Function Report—Adult and reported taking care of her daughter, including feeding, bathing, and dressing her and sometimes playing games. AR 222. Plaintiff further indicated that she has no problems with her personal care, can sometimes prepare three-course meals but otherwise prepares simple meals, prepares her own meals two-to-three times a week, cleans the house and does laundry and dishes two-to-three times a week, and cleans her bathroom once a week. AR 223. Additionally, she is able to pay her bills and count change but has difficulty using savings accounts and checkbooks, although she knows how to use money orders. AR 224. Plaintiff further stated that she can drive a car and prefers to go out alone because it is less stressful for her. AR 224-225. The ALJ's description accordingly fairly describes Plaintiff's own reports of her daily activities and her findings are supported by substantial evidence.

Plaintiff further contends that the ALJ erred by failing to consider that non-examining medical consultants H. Amado, M.D. and A. Garcia, M.D. rendered their opinions in 2015 and did not have access to Mr. Millis's opinion or any subsequent medical records. (Doc. No. 12 at 24.) Thus, according to Plaintiff, the ALJ erred by "assigning dispositive weight to these opinions." (*Id.*) However, Plaintiff's argument misconstrues the ALJ's opinion. The ALJ did not assign "dispositive" weight to the state agency physicians who rendered opinions in 2015. AR 28. Additionally, she specifically acknowledged that these physicians "did not review later medical records" and weighed the opinions accordingly. *Id.* Plaintiff therefore has not identified any basis for remand.

Plaintiff additionally argues that the ALJ erred by failing to apply the six factors set forth in 20 C.F.R. § 416.927[8] in determining the extent to which Mr. Millis's opinion should be credited. (Doc. No. 12 at 20-22.) These factors include the length of the treatment relationship, the frequency of

---

[8] In her brief, Plaintiff cites to 20 C.F.R. § 404.1527 rather than 20 C.F.R. § 416.927. (*See* Doc. No. 12 at 20.) The former regulation pertains to disability insurance benefits under Title II of the Social Security Act while the latter pertains to SSI. However, the regulations are substantively identical.

examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. *See* 20 C.F.R § 416.927. However, while the ALJ must consider those factors, she is not required to expressly discuss each one. *See Kelly v. Berryhill*, 732 Fed. Appx. 558, 562-63 n.4 (9th Cir. May 1, 2018) ("[T]he ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c)."); *Harris v. Colvin,* 584 Fed. Appx. 526, 528 (9th Cir. 2014) ("The agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c)."); Social Security Ruling 06-03p, 2006 WL 2329929, at *5 (Aug. 9, 2006) ("Not every factor weighing opinion evidence will apply in every case.").

In this case, the ALJ expressly stated that she considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927. AR 21. The ALJ also discussed Mr. Millis and Dr. Flavan's treating relationship, the frequency of examination, and the supportability of Mr. Millis's opinion and its consistency with the record. An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion. *Magallanes*, 881 F.2d at 755 (reasoning that an ALJ is not required to recite magic words to reject a physician's opinion and the Court is not deprived of its faculties for drawing specific and legitimate inferences from the ALJ's opinion); *Pacheco v. Astrue*, 2011 WL 148321, at *8 (E.D. Cal. Jan. 18, 2011). Plaintiff's challenge on this ground accordingly fails.

Finally, Plaintiff asserts that, if the ALJ had questions regarding Plaintiff's impairments or symptoms or about the consistency of the medical opinions with the underlying record, she should have "re-contacted Dr. Flavan and/or Mr. Millis with questions or for clarification, requested a new consultative examination, obtained a review of the entire record and testimony from a medical expert, or even sent the entire file back to the State Agency for review." (Doc. No. 12 at 24-25.) This argument is likewise unpersuasive.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). The ALJ's duty to "conduct an appropriate inquiry" is triggered only where evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Id.*;

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). When such a duty is triggered, an ALJ can develop the record by: (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. *Tonapetyan,* 242 F.3d at 1150.

Plaintiff suggests that the ALJ was required to re-contact Dr. Flavan and/or Mr. Millis, request a new consultative examination, or consult a medical expert. (Doc. No. 12 at 24-25.) However, this argument ignores the fact that the burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled…."). Moreover, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized the medical evidence in the record, including evidence related to Plaintiff's mental impairments, and found with the support of that record that Plaintiff had not established she was disabled. AR 12-36. The record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy. Notably, the ALJ kept the record open after the hearing at counsel's request for additional medical records. AR 15, 39-43. The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record. *Tonapetyan*, 242 F.3d at 1150; *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ's indication to plaintiff and her counsel that he would keep the record open so that they could supplement her doctor's report satisfied ALJ's duty to develop the record).

Here, there is no indication that the ALJ had any "questions" regarding the record as Plaintiff suggests. The ALJ did not find that the record was insufficient or inadequate to determine disability, nor does Plaintiff identify any ambiguous or unclear treatment notes, medical opinions, or other evidence. Therefore, the ALJ did not have a duty to further develop the record. Even if such a duty did exist, Plaintiff was provided the opportunity to present additional medical records. The ALJ was not

required to re-contact Dr. Flavan and/or Mr. Millis with questions or for clarification, request a new consultative examination, obtain a review of the entire record and testimony from a medical expert, or send the entire file back to the State Agency for review.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Dina Michelle Lebeouf.

IT IS SO ORDERED.

Dated:  **September 23, 2020**      /s/ *Barbara A. McAuliffe*
                                     UNITED STATES MAGISTRATE JUDGE